# In the United States Court of Federal Claims

No. 15-837C/15-844C (Bid Protest) (Consolidated)
(Filed Under Seal: April 14, 2016 | Reissued: April 25, 2016)[*]

|  |  |  |
|---|---|---|
| BRASETH TRUCKING, LLC, and CORWIN COMPANY, INC., | ) ) ) ) | Keywords: Bid Protest; Standing; Past Performance Evaluation; FAR 15.305(a)(2)(iv); Adjectival Ratings; Trade-off Analysis. |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) |  |

*Cynthia Malyszek*, Malyszek & Malyszek, Westlake Village, CA, for Plaintiffs.

*Emma E. Bond*, Trial Attorney, Commercial Litigation Branch, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, U.S. Department of Justice, Washington, DC, for Defendant. *Elin M. Dugan*, Senior Counsel, U.S. Department of Agriculture, Of Counsel.

### OPINION AND ORDER

**KAPLAN, Judge.**

Before the Court in this post-award bid protest are Plaintiff Braseth Trucking, LLC's (Braseth) motion for judgment on the administrative record and the government's combined motion to dismiss and cross-motion for judgment on the administrative record.

---

[*] This Opinion was originally issued under seal, and the parties were given the opportunity to request redactions. Neither party requested redactions, and the Opnion is now being reissued in full.

In a previous Opinion, the Court remanded this case to the United States Forest Service (FS) with instructions that it clarify the basis for its decision to award a contract to provide fire cache freight services to a competing offeror, Connie's, Inc. (Connie's), rather than to Braseth.[1] See Opinion and Order, ECF No. 21 (Braseth I).

For the reasons set forth below, the Court concludes that, in light of the Contracting Officer's clarification of the basis for his decision on remand, Braseth lacks standing to pursue this action. Accordingly, the government's motion to dismiss is **GRANTED** and Braseth's complaint is **DISMISSED** without prejudice based on lack of jurisdiction.

## BACKGROUND[2]

**I. The Solicitation and Contract Award**

Braseth, a trucking company located in northeast Oregon, submitted a quotation in response to an FS solicitation for "Fire Cache Freight Services," which were to include "the delivery of emergency supplies and equipment by tractor-trailer for wild land fire suppression and all-hazard emergencies to various locations in the western United States." See Admin. R. (AR) Tab 3 at 3–5, ECF No. 11; see also id. Tab 4 (solicitation); id. Tab 6 (Braseth's quotation). The contracts at issue in this case involve providing freight services for a fire cache located near La Grande, Oregon. See Compl. ¶¶ 12–15, ECF No. 1.

According to the solicitation, quotations would be evaluated based on three factors: price, past performance, and the availability of tractor/trailers within a 50-mile radius of the cache (i.e., proximity). See AR Tab 4 at 45. Past performance was considered more important than proximity; and the non-price factors together would be considered "approximately equal to price." Id.

The FS considered quotations from five companies: Braseth, Corwin, Connie's, A-Secured Properties, LLC (A-Secured), and Smith Bros. Moving Services (Smith Bros.). AR Tab 12 at 68. A-Secured and Smith Bros. submitted "Past Performance Data Sheets" describing their performance on previous FS contracts as part of their submissions.[3] See AR Tab 5 at 48; id. Tab 9 at 57. The quotations provided by Braseth,

---

[1] As discussed below, in the same Opinion, the Court also dismissed a companion complaint filed by Plaintiff Corwin Company, Inc. (Corwin) for lack of subject matter jurisdiction.

[2] A detailed recitation of the facts relevant to this case is set forth in the Court's prior Opinion and Order remanding the case to the Forest Service. See Braseth I at 2–9.

[3] Although the solicitation did not specify a particular format for the submission of past performance information, it incorporated by reference FAR 52.212-1, which instructs offerors, "[a]s a minimum," to show "[p]ast performance information . . . to include recent and relevant contracts for the same or similar items and other references (including

Corwin, and Connie's, however, did not include any information about their past performance. See AR Tabs 6–8.

The FS convened a Technical Proposal Evaluation Committee (TPEC) to evaluate the quotations. AR Tab 12 at 68. The TPEC gave each quotation an adjectival rating of "Excellent" for proximity. Id. at 69. The TPEC also rated A-Secured and Smith Bros. "Excellent" on past performance. Braseth, Corwin, and Connie's, however, received "Satisfactory" ratings on past performance. Id.

In a Memorandum of Negotiation explaining the award decisions, the Contracting Officer (CO) reviewed the TPEC's ratings. Id. at 69–70. He noted that "although [Braseth, Corwin, and Connie's] are separate companies, all three are owned by the same person, utilize the same personnel, and use each other's[] trucks interchangeably." Id. at 70. He observed that the TPEC assigned Braseth, Corwin, and Connie's "Satisfactory" ratings because of "issues [in] the past two years [involving Connie's performance] dealing with untimely invoicing, late deliveries, and having to reject a truck since it arrived at the cache full of junk." Id. The CO agreed with the TPEC that "Connie's satisfactory rating was appropriate due to the recent performance concerns." Id. According to the CO, however, Braseth and Corwin "lacked recent past performance with the agency." Id. The CO noted that, under FAR 15.305(a)(2)(iv), "an offeror without a record of relevant past performance . . . may not be evaluated favorably or unfavorably on past performance." Id. The CO ultimately left Braseth's and Corwin's satisfactory past performance ratings in place, though, because "it was considered a neutral rating." Id.

Turning to price, the CO noted that Connie's offered the lowest prices, followed by Braseth and Corwin. Id. at 74–75. A-Secured and Smith Bros. offered the highest prices. The variance between the high bid and the low bid, however, was "very tight." Id. at 74.

Next, to determine the contract awards, the CO conducted a trade-off analysis. Id. at 74–75. "Keeping in mind the combination of past performance and proximity were considered of equal importance to price," the CO recommended awarding contracts to A-Secured, Smith Bros., and Connie's. Id. A-Secured and Smith Bros., though higher priced, were considered "reliable providers" who had "consistently met their delivery schedules," and their prices were considered "competitive and reasonable." Id. at 74. The CO also determined that Connie's would be "suitable for award" because it was "lowest in price." Id.

Braseth and Corwin were not recommended for an award. Id. at 75. In explaining this decision, the CO again noted that the TPEC had expressed "the same concerns with Corwin as it did with Connie[']s" and had "identical concerns" for Braseth. Id. At the same time, however, the CO stated that Braseth and Corwin were each "considered a new

---

contract numbers, points of contact with telephone numbers and other relevant information)." See AR Tab 4 at 6.

company without a recent record of past performance." Id. The CO made no attempt to reconcile these seemingly contradictory statements. See id. He then noted that Braseth's and Corwin's prices were higher than Connie's, and not substantially lower than Smith Bros.' or A-Secured's. See id.

After the FS awarded the contracts, Braseth requested debriefing. See AR Tab 16. In a response letter, the CO explained that, "[y]our past performance was considered satisfactory overall, but several issues were noted during the evaluation." AR Tab 18 at 180. As examples of these issues, the CO listed several incidents that allegedly occurred during Connie's performance of its recent FS contract. Id. He did not restate the conclusion in the Memorandum of Negotiation that Braseth was considered a new company without a recent record of past performance. See id.

## II. The Proceedings in This Court and On Remand to the Agency

### A. **Braseth's Complaint and Motion for Judgment on the Administrative Record**

Braseth filed its complaint in this Court on August 6, 2015.[4] See ECF No. 1. It alleged numerous errors in the procurement. See id. ¶¶ 17–54. Among other things, it alleged that the CO's decision appeared to both impute Connie's past performance to Braseth and, at the same time, state that Braseth was entitled to a neutral past performance evaluation as an offeror without recent relevant past performance. Id. ¶¶ 17–29. Braseth also alleged that, to the extent that the CO imputed Connie's past performance to Braseth, he should not have done so. See id. Finally, it alleged that neither Connie's nor Braseth had ever been made aware of any performance problems on previous FS contracts and it disputed the existence of any such issues. See id. ¶¶ 18–22, 30–32.

After the government compiled the administrative record, Braseth filed its motion for judgment on the administrative record.[5] ECF No. 14. In response, the government filed a combined motion to dismiss and cross-motion for judgment on the administrative record. ECF No. 15. Braseth then filed a response to the government's combined motion. ECF No. 16.

Braseth advanced three primary arguments in its motion and its response. First, it argued that the CO's decision was arbitrary and capricious because it failed to provide a consistent rationale for Braseth's "Satisfactory" past performance rating. See Pls.' Mot. for J. on the Admin. R. (Pls.' Mot.) at 20–21; Pls.' Resp. to Def.'s Cross Mot. for J. on the Admin. R. (Pls.' Resp.) at 6–8. Braseth articulated this argument most clearly in its

---

[4] The next day, Corwin filed a nearly identical complaint, see Compl., No. 15-cv-844 (Aug. 7, 2015), ECF No. 1, and the Court consolidated the two cases, see Order, No. 15-cv-844 (Aug. 11, 2015), ECF No. 7.

[5] This motion was a combined motion on behalf of both Braseth and Corwin.

response, contending that "[w]hile both of these lines of evaluations [sic] (negative past performance issues versus new company [with] no past performance) come up with the same resulting 'satisfactory' rating by the Forest Service, it shows that they did not follow the proper evaluation requirements." See Pls.' Resp. at 8.

Second, it argued that, to the extent the CO imputed Connie's past performance to Braseth, his decision to do so was legally erroneous. See Pls.' Mot. at 10–11, 18–19; Pls.' Resp. at 8–9. According to Braseth, imputing Connie's past performance to it placed a "negative connotation or stigma against [it];" but, under FAR 15.305(a)(2)(iv), Braseth "should not have been penalized for [its] 'neutral' rating due to no past performance as a 'new company.'" See Pls.' Resp. at 8; see also id. at 10 ("The awarding CO was unreasonable in reviewing the past performance when there was not 3 year prior relevant information . . . . [w]hen FAR and the solicitation states that an offeror with no relevant past performance within 3 years would be considered neither favorable nor unfavorable."); Pls.' Mot. at 11 ("The issues that were stated are stated as those of Connies [sic] and not of Braseth . . . ."). Braseth also took this position at oral argument. See Oral Argument at 7:04–15 (Nov. 19, 2015) (arguing that that Braseth "didn't have a contract . . . in the last/prior three years, so it could have been a neutral [on] past performance").

Finally, Braseth argued that the CO acted in a manner contrary to law when he accepted the "Satisfactory" rating that the TPEC assigned to Connie's (and, by extension, imputed to Braseth). See Pls.' Mot. at 4–18; Pls.' Resp. at 8–15. In this regard, it argued (among other things) that the CO should not have relied on the TPEC members' recollections of their past experiences with Connie's, Pls.' Mot. at 4–5; Pls.' Resp. at 10; that the TPEC members' recollections of incidents involving Connie's were incorrect, Pls.' Mot. at 14–18; Pls.' Resp. at 12; and that the CO had an obligation to inquire into other possible sources of past performance information, Pls.' Mot. at 6–8; Pls.' Resp. at 10–14.

### B. The Court's Previous Opinion and Order Remanding the Case to the Forest Service

On December 4, 2015, the Court issued an Opinion dismissing Corwin's complaint for lack of standing and remanding the case to the Forest Service to allow it to clarify the basis for its decision as to Braseth. See Braseth I at 15.[6] First, the Court observed that, assuming the merits of Braseth and Corwin's legal argument that the CO should not have attributed Connie's past performance to them, the two companies would have been entitled to neutral ratings as offerors without relevant past performance. Id. at 12. It further explained that "nothing in the record [led] the Court to believe, given the tight variance [in price], that there was a substantial chance that the CO might have chosen a company with no relevant past performance over a company with an excellent

---

[6] The Opinion was originally released under seal. The Court later reissued the Opinion in redacted form. See ECF No. 25.

past performance rating." Id. at 12 n.8. Thus, the Court concluded that "both Braseth and Corwin could only compete for the award that eventually went to Connie's." Id. at 13. And because "Corwin's quote was equivalent to Braseth's in terms of past performance, and its quoted prices were higher," Corwin had no substantial chance of securing an award. See id. at 12–13. Accordingly, the Court dismissed Corwin's complaint for lack of subject matter jurisdiction. Id. at 13.

Turning to Braseth's claims on their merits, the Court found that it was not possible to determine from the record whether the CO's decision to award a contract to Connie's rather than Braseth "represented a reasonable exercise of his discretion." Id. The Court observed that the record contained "contradictory statements" about why Braseth received a "Satisfactory" past performance rating. Id. (noting that the CO "stated both that Braseth was 'considered a new company without a recent record of past performance' and that there were '[i]dentical concerns as Connie's—i.e., concerns about past performance." (quoting AR Tab 12 at 75)). The Court concluded that the record "lack[ed] sufficient clarity" for it to determine the exact basis for the CO's decision to award the contract to Connie's rather than Braseth. Id. at 15. Accordingly, the Court remanded the case to the Forest Service to allow the CO to "provide an explanation for his exercise of discretion that is coherent and not internally inconsistent so that the Court has a basis for reviewing its reasonableness." Id. at 14.

      **C.**      **The Forest Service's Decision on Remand**

On December 11, 2015, the FS filed its remand decision. See ECF No. 24-1. In it, the CO clarified that, in his view, there had existed alternative rationales for awarding the contract to Connie's rather than Braseth. First, the CO described the issues that had been identified with respect to Connie's recent performance and explained that "Connie's satisfactory rating was appropriate due to these recent performance concerns." Id. at 1. He then determined that "[s]ince Braseth relied on the same personnel, trucks, etc. as Connie's, it was rated equally as satisfactory." Id.

In the alternative, the CO determined that if Connie's past performance were not imputed to Braseth, then "Braseth had no relevant past performance and thus was entitled only to a 'neutral' performance rating consistent with FAR 15.305(a)(2)(iv)," and that "a neutral evaluation would have resulted in a satisfactory rating for Braseth, because every other available adjectival rating was either favorable or unfavorable." Id. at 2.

The CO then clarified the trade-off analysis that would apply under each alternative. See id. Under the first alternative—in which "Braseth received a satisfactory past performance rating due to its affiliation with Connie's and thus had the same performance concerns"—the CO determined that the award should go to Connie's simply because Connie's offered a lower price. See id. Under the second alternative, the CO determined that the award should still go to Connie's because "Connie's known performance and lower price would be considered more advantageous than Braseth's unknown performance and higher price." Id.

6

Following the CO's remand decision, the parties filed supplemental briefs to address the impact of that decision on their pending cross-motions. See ECF Nos. 33–36. Accordingly, the cross-motions are now ripe for decision.

## DISCUSSION

**I.   Standing in Post-Award Bid Protest Cases**

As described in the Court's previous Opinion, the Court of Federal Claims' bid protest jurisdiction is defined by 28 U.S.C. § 1491(b)(1), which grants the Court jurisdiction to "render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Thus, only an "interested party" has standing to invoke the Court's bid protest jurisdiction. CGI Fed. Inc. v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2015); Myers Investigative and Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue.").

According to the Federal Circuit, an "interested party" under 28 U.S.C. § 1491(b)(1) is "an actual or prospective bidder . . . whose direct economic interest would be affected by the award of the contract." CGI Fed., 779 F.3d at 1348 (quoting Am. Fed'n of Gov't Employees, AFL-CIO v. United States, 258 F.3d 1294, 1299 (Fed. Cir. 2001); see also Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). In a post-award bid protest, the protester cannot demonstrate a "direct economic interest" unless it had a "substantial chance" of winning the award "but for the alleged error in the procurement process." Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Info. Tech., 316 F.3d at 1319 (observing that the protestor's chance of securing the award "must not have been insubstantial"). Put differently, the protester must have been "prejudiced" by the alleged error. Tinton Falls, 800 F.3d at 1358.

When determining whether the protester has standing, the Court "must accept the well-pled allegations of agency error to be true." USfalcon, Inc. v. United States, 92 Fed. Cl. 436, 450 (2010) (citing Info Tech, 316 F.3d at 1319). The protester "is not required to show that but for the alleged error, the protester would have been awarded the contract." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). Rather, standing exists if there was a "reasonable likelihood that the protester would have been awarded the contract" but for the alleged error. Id.

Finally, because the existence of standing determines whether the Court has subject matter jurisdiction over the case, "it is not enough that [standing existed] when [the] suit was filed." Lewis v. Continental Bank Corp., 494 U.S. 472, 477–78 (1990). Rather, the Court must assess whether standing exists throughout the course of the litigation. See id.; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998).

7

## II. Application to This Case

As discussed, Braseth has standing only if it can show that—absent the errors it has alleged—it had a substantial chance of receiving a contract award. On the record before the Court when it issued its previous Opinion, the Court found that Braseth had sufficiently alleged prejudice. First, it assumed that it would have been erroneous for the CO to impute Connie's past performance to Braseth. Braseth I at 11–12. Next, the Court reasoned that, had Braseth's satisfactory rating been the result of a truly neutral evaluation, there was a substantial chance Braseth might have secured the award because the CO could reasonably have decided that "the risks associated with dealing with an entity with no performance record at all . . . outweighed the benefits of choosing one that could be rated 'satisfactory' but still had known weaknesses." Id. at 12.

The CO's remand decision, however, has changed the landscape regarding Braseth's standing. It has clarified that—even if Braseth was correct that it would be legal error to impute to it Connie's past performance—there would still exist an alternative basis (whose lawfulness Braseth has never challenged) for awarding the contract to Connie's rather than Braseth: that "Connie's known performance and lower price [are] considered more advantageous than Braseth's unknown performance and higher price." Remand Decision at 2.

Thus, as Braseth itself acknowledged in its briefing on the cross-motions for judgment on the administrative record, if the CO did not impute Connie's past performance to it, Braseth was entitled, at most, to a neutral past performance evaluation. See Pls.' Resp. at 6 (arguing that Braseth "should have been rated only on 'neutral' past performance" under FAR 15.305(a)(2)(iv)).[7] And Braseth has never before—so far as the Court can discern from its papers—challenged the lawfulness of the CO's trade-off decision, so long as it was based on the premise that Braseth's satisfactory rating reflected its lack of past performance rather than the attribution of Connie's performance

---

[7] As the plain language of FAR 15.305(a)(2)(iv) makes clear, Braseth's concession on that point was undoubtedly correct. That provision states that "[i]n the case of an offeror without a record of relevant past performance . . . the offeror may not be evaluated favorably or unfavorably on past performance." Id. "In evaluating an offerror's past performance," the FAR "affords agencies considerable discretion in deciding what data is . . . relevant." Seaborn Health Care, Inc. v. United States, 101 Fed. Cl. 42, 51 (2011); see also PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 539 (2010) ("[I]t is important to note that what does or does not constitute 'relevant' past performance falls within the [CO's] considered discretion."). Agencies routinely select three years as the cut-off point when assessing the relevance of past contract performance. See CRAssociates, Inc. v. United States, 95 Fed. Cl. 357, 364 (2010); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 683 (2010); Precision Images, LLC v. United States, 79 Fed. Cl. 598, 600–601 & n.11 (2007). And Braseth admits that it last held a contract with the FS in 2012. See Compl. ¶ 12. Thus, there is no question that a neutral past performance rating was an appropriate rating for Braseth in this case.

to Braseth. Thus, even if the Court were to determine that the decision made under the rationale in which Connie's past performance was attributed to Braseth was erroneous, Braseth still would have no substantial chance of securing the award because the alternative rationale based on Braseth's neutral rating provides an independent basis for awarding the contract to Connie's.

The contrary arguments Braseth now raises are based on new contentions that were not made when the cross-motions for judgment on the administrative record were filed, and that are therefore waived. See Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); Brooks Range Contract Servs., Inc. v. United States, 101 Fed. Cl. 699, 708 (2012) ("A party may waive arguments that might demonstrate that it is an interested party if they are not presented in its opening brief."). In its supplemental briefs, Braseth argues (for the first time) that, instead of receiving a neutral rating under FAR 15.305(a)(2)(iv), it should have received an "excellent" rating; and, conversely, that the record does not support the "excellent" ratings given to A-Secured and Smith Bros. See Pls.' Suppl. Brief at 2–3, 7, ECF No. 33. Thus, it now argues that it (along with Connie's) had a substantial chance of securing one of the awards given to Smith Bros. and A-Secured.

Braseth, of course, did not advance this argument in its original motion for judgment on the administrative record; nor has it directly challenged the Court's holding to the contrary in its previous Opinion. See Braseth I at 12 n.8 (concluding that "nothing in the record leads the Court to believe . . . that there was a substantial chance that the CO might have chosen [Braseth] over a company with an excellent past performance rating"). Moreover, this argument contradicts Braseth's concession in its original response that it would have been appropriate for Braseth to receive a neutral rating for its past performance. See Pls.' Resp. at 6. And it is at odds with the position it took at oral argument that Braseth "didn't have a contract . . . in the last/prior three years, so it could have been a neutral [on] past performance." See Oral Argument at 7:04–15. Accordingly, Braseth's new arguments will not be considered by the Court and provide no basis for establishing Braseth's continued standing in this case.[8]

---

[8] Notably, even if Braseth had standing, its prospects for success on the merits would be dubious. As the Court observed in Braseth I, under the FAR, the government may "'evaluat[e] the offeror['s] past performance' based on information obtained not only from the offeror, but also from 'any other sources' at its disposal." Braseth I at 15 n.10 (quoting FAR 15.305(a)(2)(ii)). And the regulations likewise "'state that the CO 'should take into account' past performance information regarding 'predecessor companies, key personnel who have relevant experience, or subcontractors that will perform major or critical aspects of the requirement' as long as that information 'is relevant to the instant acquisition.'" Id. (quoting FAR 13.305(a)(2)(iii)).

Braseth does not appear to dispute that Connie's and Braseth are related in the ways discussed by the CO—i.e., that they "are owned by the same person, utilize the same personnel, and use each other's[] trucks interchangeably." See AR Tab 12 at 69–70. And

In sum, in light of the alternative rationales articulated in the CO's remand decision, the Court concludes that Braseth lacks standing to bring this protest because—even if Braseth were to succeed in its challenge to the CO's conclusion that Connie's performance should be attributed to Braseth—the alternative rationale articulated by the CO, which is based on the assignment of a neutral rating to Braseth, would remain. Braseth therefore had no substantial chance of receiving a contract award under the solicitation even if the errors alleged in its complaint and articulated in its initial motion for judgment on the administrative record were corrected. Accordingly, Braseth's complaint must be dismissed for lack of subject matter jurisdiction.[9]

## CONCLUSION

For the reasons discussed above, the Court lacks subject matter jurisdiction over Braseth's complaint. Therefore, Braseth's complaint is hereby **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly. Each party shall bear its own costs.

**IT IS SO ORDERED.**

    /s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

Braseth offers no concrete reason why, given those connections, it would be contrary to FAR 15.305(a)(2) to impute Connie's past performance to Braseth. See Pls.' Mot. at 18 (arguing only that the companies "are separate companies from each other and not a legal entity of the other"). In fact, courts have suggested that agencies generally may not turn a blind eye to relevant past performance information in their possession. See Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780–81 (2011) (agency was "obliged to draw upon internal information that concerned any of the [offerors'] prior work, even if the offeror did not cite it"); Int'l Res. Recovery, Inc. v. United States, 64 Fed. Cl. 150, 162–63 (2005) (faulting CO for failing to consider past performance information that was "too close at hand" to ignore (quoting Int'l Bus. Sys., Inc., B-275554, 1997 WL 113958, at *4 (Comp. Gen. Mar. 3, 1997))).

[9] To the extent Braseth seeks to allege that the CO's past performance evaluation has caused a stand-alone injury to its reputation, it cannot pursue such a claim under this Court's bid protest jurisdiction: that jurisdiction is limited to remedying competitive injuries suffered in the course of a procurement. See 28 U.S.C. § 1491(b)(1); Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 243 (2001).